IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 11, 2015

**STATE OF TENNESSEE v. WILLIAM C. BOLES**

**Appeal from the Criminal Court for Clay County**
**No. 2012-CR-91    David Patterson, Judge**

---

**No. M2014-01023-CCA-R3-CD – Filed June 11, 2015**

---

The defendant, William C. Boles, appeals his Clay County Criminal Court jury convictions of two counts of the delivery of oxycodone, a Schedule II drug, in a drug-free school zone and one count of possession with the intent to sell oxycodone in a drug-free school zone, for which he received a total effective sentence of 60 years' incarceration, claiming that the trial court erred by admitting certain evidence, that the evidence was insufficient to support his convictions, and that the trial court erred by imposing partially consecutive sentences. Because we conclude that no error attends the convictions or sentences, the convictions and sentences are affirmed. Because we detect error in the judgment forms, however, the case must be remanded to the trial court for the entry of corrected judgment forms reflecting the mandatory minimum period of incarceration as required by Tennessee Code Annotated section 39-17-432.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed and Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROGER A. PAGE, JJ., joined.

Michael R. Giaimo, Cookeville, Tennessee, for the appellant, William C. Boles.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General (Senior Counsel); Bryant C. Dunaway, District Attorney General; and Mark Gore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Clay County Criminal Court jury convicted the defendant of two counts of the delivery of oxycodone within a drug-free school zone and one count of possession with intent to sell oxycodone within a drug-free school zone based upon evidence that the

defendant sold and possessed oxycodone at his residence, which was located less than 1,000 feet from the Clay County Alternative School.

On June 23, 2012, Clay County Sheriff's Office Detective Randall Clayton met with a confidential informant, Travis Webb, who had reported to Detective Clayton that he could purchase oxycodone from the defendant. Detective Clayton searched Mr. Webb's person and his vehicle, and then he outfitted Mr. Webb with audio recording equipment and placed hidden video recording equipment inside Mr. Webb's vehicle. Detective Clayton provided Mr. Webb with cash to purchase the drugs. Mr. Webb placed a monitored and recorded telephone call to the defendant, who agreed to sell Mr. Webb oxycodone. Detective Clayton and other officers followed Mr. Webb as he drove toward the defendant's residence, but they stopped in a parking lot near the defendant's residence to set up a location for monitoring the impending transaction.

When Mr. Webb arrived at the defendant's residence, the defendant got into Mr. Webb's vehicle and gave him one 40-milligram oxycodone tablet in exchange for $40. The entire transaction was video recorded, and the video recording as well as still photographs taken from the recording were exhibited at trial. Both the recording and the photographs clearly show the defendant's face. After leaving the defendant's residence, Mr. Webb met Detective Clayton at a secure location and gave him the tablet he had purchased from the defendant. Testing performed by the Tennessee Bureau of Investigation ("TBI") established that the tablet was oxycodone.

On July 19, 2012, Detective Clayton arranged a second controlled buy between the defendant and Mr. Webb. Detective Clayton again searched Mr. Webb and Mr. Webb's vehicle and outfitted Mr. Webb with audio recording equipment. Mr. Webb was provided with a video recording device hidden inside what appeared to be the keyless entry remote for Mr. Webb's vehicle. Detective Clayton provided Mr. Webb with cash. Mr. Webb made another monitored and recorded telephone call to the defendant, and the defendant again agreed to sell Mr. Webb oxycodone. Mr. Webb traveled to the defendant's residence, followed by Detective Clayton and other officers, who again set up a monitoring station in a parking lot near the defendant's residence.

When he arrived at the defendant's residence, Mr. Webb went inside, where the defendant gave him a single 40-milligram oxycodone tablet in exchange for $40. This transaction was also caught on video, and the video recording and several still photographs taken from it were entered into evidence. Again, the defendant's face was clearly visible in the recording and photographs. Mr. Webb left the defendant's residence and traveled to a secure location, where he gave Detective Clayton the tablet he had purchased from the defendant. TBI testing confirmed that the tablet was oxycodone.

Detective Clayton and other members of the Clay County Sheriff's Office executed a search warrant at the defendant's residence on July 20, 2012. Inside the defendant's bedroom, the officers found a blue bottle hidden inside a trash can; the bottle contained four 40-milligram oxycodone tablets that were similar to those purchased from the defendant by Mr. Webb and four-and-a-half tablets of another form of oxycodone. The bottle also contained roxycodone tablets. In the defendant's mother's bedroom, officers found a medication bottle that contained 19 30-milligram oxycodone tablets. The label affixed to the bottle of oxycodone found in the defendant's mother's room indicated that it belonged to the defendant and that the prescription for 136 oxycodone tablets had been filled on July 12, 2012.

TBI testing confirmed, and the parties stipulated, that the eight and one-half pills discovered in the blue bottle found inside the defendant's room and the 19 pills found inside the bottle that was located in the defendant's mother's room were oxycodone.

Upon questioning by officers, the defendant acknowledged that the oxycodone discovered inside the residence belonged to him and that he had been selling the pills "three times a day for the past month" as a means to earn money to make needed plumbing repairs at his residence.

Detective Clayton initially used TBI software to determine that the defendant's residence was within 1,000 feet of the Clay County Alternative School, and then he used a measuring wheel to confirm that the residence was approximately 650 feet from the school.

Based upon this proof, the jury convicted the defendant as charged, and, following a sentencing hearing, the trial court sentenced the defendant as a career offender to 30 years' incarceration for each of his three convictions. The court ordered that the convictions for delivery of oxycodone be served concurrently to one another and that the sentence for the conviction for possession with intent to sell oxycodone be served consecutively to the convictions for delivery of oxycodone, for a total effective sentence of 60 years.

The defendant filed a timely but unsuccesful motion for new trial followed by a timely notice of appeal to this court. In this appeal, he challenges the admission of the labels affixed to the medication bottles found inside his residence, the sufficiency of the convicting evidence, and the imposition of consecutive sentences. We consider each claim in turn.

*I. Medication Labels*

The defendant contends that the trial court erred by admitting into evidence the labels affixed to the medication bottles discovered during execution of the search warrant at his residence because those labels constituted inadmissible hearsay. The State asserts that the defendant waived our consideration of this issue by failing to raise it in his motion for new trial and that, in any event, admission of the labels, even if it was erroneous, was harmless.

At trial, the defendant objected to the admission of the labels affixed to the medication bottles on grounds that they contained inadmissible hearsay. The State argued that the labels were "an adopted admission." The trial court overruled the objection, concluding that the labels did "not cause the court to believe that the evidence should be suppressed" and that the labels were "consistent with the testimony that the officer has given today regarding what is being said by the defendant."

As the State correctly points out, the defendant failed to present this issue in his motion for new trial, and, in consequence, it is waived. Tenn. R. App. P. 3(e) ( "[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."). Moreover, because the admission of this evidence, even if it was erroneous, can be classified as harmless in light of the overwhelming proof of the defendant's guilt, including his admission, consideration of the error is not "'necessary to do substantial justice.'" *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (holding that before an error may be recognized as plain, a reviewing court must find all five factors enumerated in *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994), and that "complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established").

*II. Sufficiency*

The defendant next asserts that the evidence was insufficient to support his convictions. Other than a bare assertion of general insufficiency, the defendant does not express how the evidence adduced at trial failed to establish his guilt of the charged offenses.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S.

307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

"It is an offense for a defendant to knowingly . . . (2) [d]eliver a controlled substance . . . or (4) [p]ossess a controlled substance with intent to sell the controlled substance." T.C.A. § 39-17-417(a). A violation of this section with respect to oxycodone, a Schedule II controlled substance, *see id.* § 39-17-408(b)(1)(M), is a Class C felony unless it "occurs . . . within one thousand feet (1,000′) of the real property that comprises a public . . . elementary school, middle school, secondary school," when it "shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation," *see id.* § 39-17-432(b).

Here, the evidence established that the defendant sold oxycodone to Mr. Webb during controlled buys on June 23 and July 19, 2012. Both purchases were audio and video recorded, and the jury viewed not only the video recordings of both transactions but also still photographs of the defendant's face taken from those recordings. During the July 20, 2012 search warrant execution, officers discovered two medication bottles that contained oxycodone tablets. The defendant admitted to officers that he had been selling the pills "three times a day for the past month." Also, proof established that these offenses occurred within 1,000 feet of the Clay County Alternative School. This evidence was more than sufficient to support each of the defendant's convictions.

### III. *Sentencing*

Finally, the defendant asserts that the trial court should not have ordered that he serve two of the 30-year sentences imposed for each of his convictions consecutively. He argues only that "the government failed to meet its burden to satisfy the statute." The State contends that the imposition of partially consecutive sentences was appropriate given the defendant's lengthy and extensive criminal record.

Our standard of review of the trial court's sentencing determinations in this case is whether the trial court abused its discretion, but we apply a "presumption of reasonableness to within range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

With respect to consecutive sentencing, our supreme court has held that the standard of review adopted in *Bise* "applies similarly" to the imposition of consecutive sentences, "giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013).

The defendant's 31 prior convictions, including 11 prior convictions for the possession, sale, or delivery of Schedule II drugs, made him a career offender, *see id.* § 40-35-108(a), and resulted in his receiving a sentence of 30 years for each of his three convictions, *see id.* § 40-35-108(c) ("A defendant who is found by the court beyond a reasonable doubt to be a career offender shall receive the maximum sentence within the applicable Range III."); *id.* § 40-35-112(c)(2) ("A Range III sentence is . . . [f]or a Class B felony, not less than twenty (20) nor more than thirty (30) years."). The trial court imposed partially consecutive sentences based upon its finding that the defendant was "an offender whose record of criminal activity is extensive." *See* T.C.A. § 40-35-115(b)(2).

In our view, the record supports the sentencing decision of the trial court. The 66-year-old defendant had a criminal history that began in 1979 and included convictions in each of the ensuing decades. His employment history, however, spanned only six years. Additionally, the record shows that the defendant was serving an eight-year probationary sentence for the sale of Schedule II drugs at the time he committed the offenses in this case. Given the defendant's extensive history of criminal convictions, the trial court did not abuse its discretion by ordering partially consecutive sentences.

### IV. Corrected Judgments

Although not raised by either party, we detect clerical errors in the judgments that require correction. Generally, "[r]elease eligibility for each defendant sentenced as a career offender shall occur after service of sixty percent (60%) of the actual sentence imposed less sentence credits earned and retained by the defendant." T.C.A. § 40-35-501(f). Code section 39-17-432, relative to a violation of Code section 39-17-417 in a drug-free school zone, however, requires that,

> [n]otwithstanding any other law or the sentence imposed by the court to the contrary, a defendant sentenced for a violation of subsection (b) shall be required to serve at least the minimum sentence for the defendant's appropriate range of sentence. Any sentence reduction credits the defendant may be eligible for or earn shall not operate to permit or allow the release of the defendant prior to full service of the minimum sentence.

*Id.* § 39-17-432(c). As noted above, the defendant was sentenced as a career offender, putting his "appropriate range of sentence" at "the maximum sentence within the applicable Range III," or, in this case, 30 years. *Id.* § 40-35-108(c) ("A defendant who is found by the court beyond a reasonable doubt to be a career offender shall receive the maximum sentence within the applicable Range III."); *id.* § 40-35-112(c)(2) ("A Range III sentence is . . . [f]or a Class B felony, not less than twenty (20) nor more than thirty (30) years. After applying the provisions of Code sections 39-17-432(c), 40-35-108(c), and 40-35-112(c)(2), we see that the defendant must serve 100 percent of the each 30-year sentence imposed by the trial court. Although the trial court recognized and acknowledged this fact at the sentencing hearing, it failed to memorialize on the judgment form the minimum mandatory sentence as required by Code section 39-17-432(c). Consequently, we must remand the case for the entry of corrected judgment forms that reflect in the "Sentence Length" portion of the judgment form that, pursuant to Code section 39-17-432, the defendant must serve a minimum mandatory sentence of 30 years for each of his convictions.

### Conclusion

Based upon the foregoing analysis, we affirm the convictions and sentences but remand the case to the trial court for the entry of corrected judgment forms.

_____
JAMES CURWOOD WITT, JR., JUDGE